## JOHNSON CITY BUICK COMPANY v. ALVIN R. GODSEY.

Eastern Section. ——— —, ——.

Sells, Simmonds & Bowman, of Johnson City, for appellant.
Cox & Taylor, of Johnson City, for appellee.

PORTRUM, J.   The bill in this cause was filed to enjoin an action at law prosecuted by Alvin R. Godsey against the Johnson City Buick Company, before a Justice of the Peace, to recover the purchase price paid by him to the company in an exchange of cars under a conditional sales contract, for the failure of the company to comply with the conditional sales contract by advertising the car within the time provided by law after default in payment and reclamation of the car. The statute expressly gives to the purchaser a cause of action, or the right to recover the amounts paid upon the contract in the event the car is reclaimed by the seller, after default, and the property is not offered for sale in the manner provided; it also expressly provides that the buyer may prosecute his action before a Justice of the Peace. The chancellor, upon motion, required the complainant to confess judgment before the Justice of the Peace on the penalty of having the injunction discharged.

On June 20, 1928, Godsey, who is a plasterer by trade, exchanged his Chevrolet car, valued at $400, for a Nash car, valued at $700, and for the difference of $300 he executed a note due in ten monthly installments. The note was made out for $333.33, the excess being the carrying charges, and the company discounted the note with the Gump Investment Company. At the time of the trade, Godsey explained

that he was a plasterer and expected to discharge the installments from his wages. The first installment fell due on July 20th, and this was paid. When the next fell due, Godsey claims to have been out of work and he did not meet it. The Gump Investment Company called upon Godsey to surrender the car and, on the 9th of October, he took the car to the Johnson City Buick Company, pursuant to instructions given him by the investment company. On October 11th, the Buick company wrote Godsey a letter, as follows:

"Dear Sir: Referring to the Nash sedan which you left here for storage on October 10, 1928, with the request that we keep it for you until such time as you could meet the payments due on your note with the Gump Investment Company.

"We now confirm this verbal agreement and agree to hold the automobile for you until such time as you make the payments on your note to the Gump Investment Company. This agreement will hold good until November 10, 1928, after which time we will be obliged to advertise and sell the car under the terms of the note unless these payments are made prior to that date."

On November 8th, two days before the time limit as fixed in the letter, Godsey went to the garage of the complainant and talked with a Mr. Parnell, the manager, asking for a little further time to meet his payments.

The issue presented here is, Did Mr. Parnell allow him additional time and, if so, how long?

Mr. Godsey testified:

"Q. What was the conversation, Mr. Godsey, what did you tell him? A. I told Mr. Parnell that I wasn't going to be able to make the payment by the 10th; that I could not meet it by the 10th; that I had some money coming that I couldn't get. . . . and I couldn't meet the payment on the 10th, but I had some work coming that I was going to work on by the day as soon as I could get through that, and that if he would allow me some more time I would pay by the week till I got caught up, and told him I was going to work on the Chronicle and would pay ten dollars a week till my payments caught up, and Mr. Parnell asked me to give him an order to Mr. Guy Smith for the account. I couldn't do it because I hadn't worked there. He said 'Well, I couldn't make any other agreements whatever. You will have to abide by the law, your time is out the 10th to redeem it and if you do I can call the sale off and not make the sale.'"

Mr. Parnell's testimony is in part as follows:

"Q. Now, Mr. Parnell, when Mr. Godsey went up there on the 8th and asked you for additional time, as he testified before the magistrate and his answer states, you told him you could not give the time but told him he could have the time intervening from that time until the notices of sale were posted and running? A. I told him he could have

ten days before it was advertised and ten days after, not to exceed twenty days.

"Q. Not to exceed twenty days? A. Approximately twenty.

"Q. To boil it down, didn't he ask you to change the agreement set out in your letter of October 11th and you told him you would not do it? A. Conditionally I did. May I explain?

"Q. Yes. A. I asked how much time he wanted and he said about fifteen days and I told him it would not be necessary for us to write any further letters about it but we could agree for the fifteen days because I would not advertise it for at least five days and it would be advertised for ten days, and he could have the car by a payment of the debt any time before it was sold or after it was sold.

. . . . .

"Yes sir, that was all the time he asked for and I told him I would not advertise it on the 10th but wait several days.

"Q. Not exceeding five days? A. That was what I had in mind, but I cannot say that was what I told him.

"Q. What you had in mind and attempted to convey to him, as I understand you now, was that you had twenty days from and after November 10th to advertise and sell the car? A. Yes sir.

"Q. You understood you had ten days within which to post the advertisement and the advertisement had to run ten days? A. Yes sir.

"Q. I think I understand you. That was what you had in mind and what you told Mr. Godsey? A. Yes sir."

From the foregoing evidence it is clear that Mr. Parnell made no agreement to extend the time but only assured Mr. Godsey of his right to redeem any time within the twenty days allowed by law in which to sell the car.

The company did not advertise the car within the five days mentioned by Mr. Parnell, but advertised it on the 28th day of November, fixing the date of the sale as the 8th day of December. On the 7th of December, Mr. Godsey filed this suit before a Justice of the Peace to recover the amount paid on the theory that the company was liable to him for the amount since it had reclaimed the car and failed to sell it in the method provided by law. The justice hearing the case intimated that he would give judgment in favor of the plaintiff, but finally took the case under advisement for a day or two. On the following day, for some reason best known to the company, the sale of the car was abandoned and two days later the company filed its bill in the chancery court, asking that the action at law be enjoined and that the matters in litigation be settled in the chancery court, offering to produce and deliver the car into the custody of the court, and praying for a receiver to take charge of it and sell it under the orders of the court in the event Godsey refused to accept the proposition of the company to retake the car and pay the amount then due. The in-

junction was granted and thereafter the company made a motion in which they offered to return the car to Godsey in the event he paid the amount in arrears.

The defendant demurred to this bill on the ground that the company's right was unimpeded and the remedy at law was adequate and this being true, the chancery court had no jurisdiction of the case. The demurrer was overruled, answer filed, and proof was taken, and the case went to trial upon the record. The chancellor was of the opinion that it was immaterial whether the conditional sales contract was complied with in the sale of the car for the reason that a court of equity had been appealed to and had taken the car into its custody and its orders and decrees were not restricted by the requirements of the conditional sales statute. It necessarily followed that Godsey was not entitled to reclaim his purchase price because he was not allowed to establish the fact that the car had not been sold according to law; and that the company was entitled to recover the balance due under the conditional sales contract. The defendant appealed from this decree to this court, and his first complaint is that the chancellor erred in overruling the demurrer questioning the jurisdiction of the chancery court. Since the conditional sales statute expressly provides that the purchaser may prosecute his action before a Justice of the peace, and also contemplates an action in behalf of the seller in the event he has complied with the contract, it seems that the remedy at law is adequate, and the intervention of a court of equity is wholly unnecessary. At most the seller had a set-off or counterclaim which he may have prosecuted with effect in the law court in event he had complied with the law. The only grounds laid in the bill for the intervention of a court of equity is the fact that the seller had a cause of action he wished to prosecute; and that the seller, before the Justice of the Peace, had offered to abandon the sale and return the car if the purchaser would pay the amount due, and it is alleged that the conduct of the purchaser in declining this proposition is inequitable. If the company at that time had violated the terms of its contract, it could not insist upon the purchaser waiving his rights. In the brief it is said that the purchaser was insolvent and the company had a judgment against him with a nulla bona return and for this reason the chancery court should retain jurisdiction. The bill makes no mention of these facts.

On the other hand, it is said the conduct of the company is inequitable and the action of the court in permitting the bill to be filed and in overruling the demurrer accomplished an unjust result if it can be said the conclusions of the chancellor upon the facts are the correct conclusions. It is undisputed that the company held this car after the 10th of November, when the extension of the time expired, until the 8th of December at the date of the sale and even then abandoned the sale and held the car two days longer, when it filed its bill and

attempted to push the possession of the car into the custody of the court and avoid its default by saying that the court was not required to follow the provisions of the law and advertise according to the requirement of the conditional sales statute. Certainly this was an injustice to the defendant in the event the conclusions of the chancellor were correct. He had a good cause of action, entitling him to a recovery of $400 up until the time of the filing of the bill, and upon the filing of the bill he lost his cause of action. This does not appear to us to be either just or sound. Had the seller filed his bill before the time to advertise had expired and before he was in default then there would be some reason upon which to base the conclusion that the court could disregard the statutory provisions for sale and prescribe for itself other different and just provisions. After a default this result does not follow. If it did, the seller could reclaim the car and keep it indefinitely, or until such time as the purchaser brought suit to recover the purchase price paid, when the seller could file his bill, turn the car into the custody of the court and avoid the consequences for his default.

The judgment of the lower court is reversed, and the suit is dismissed at the cost of the appellee. The appellant is entitled to an order making final the confession of the judgment in the lower court.

Snodgrass and Thompson, JJ., concur.